# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DARLENE HIBBEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-111-TLW |
| | ) | |
| STATE OF OKLAHOMA ex rel. | ) | |
| DEPARTMENT OF VETERANS | ) | |
| AFFAIRS a/k/a CLAREMORE | ) | |
| VETERANS CENTER, and | ) | |
| TIM POTTEIGER, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION

Before the Court is the Motion to Dismiss (dkt. 13) filed by defendants State of Oklahoma ex rel. Department of Veterans Affairs ("ODVA") a/k/a Claremore Veterans Center ("Center"), and Tim Potteiger ("Potteiger"). Plaintiff Darlene Hibben ("Hibben") brought this action on January 26, 2016, alleging that (1) Potteiger violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654 ("FMLA"); (2) Potteiger violated her rights under 42 U.S.C. §1983 by retaliating against her for exercising her rights under the First Amendment of the United States Constitution; (3) ODVA violated Article 2, § 22 of the Oklahoma Constitution by terminating her for exercising her right to free speech under the Oklahoma Constitution; (4) Potteiger is liable for intentional infliction of emotional distress; and (5) Potteiger maliciously interfered with her contractual relationship with ODVA.[1] See (Petition, Dkt. 2). Defendants argue that plaintiff has failed to state a claim with respect to each of these

---

[1] Plaintiff filed this lawsuit in Rogers County District Court. Potteiger, with ODVA's consent, removed the action to federal court. Plaintiff has not challenged the removal, and the Court agrees that it has jurisdiction. See 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

causes of action and that the Court lacks subject matter jurisdiction due to sovereign and qualified immunity. (Dkt. 13). Plaintiff counters that her petition alleges claims in sufficient detail, that sovereign immunity does not extend to constitutional violations, and that Potteiger does not possess qualified immunity because his conduct violated clearly established law. (Dkt. 15).

## I. FACTUAL ALLEGATIONS

Plaintiff is a former employee of the ODVA. (Petition, Dkt. 2 at 4).[2] Defendant Tim Potteiger was her supervisor. Id. at 5. Plaintiff alleges that in December, 2012, she attended a town hall meeting hosted by a state senator who was investigating "allegations of neglect and abuse against the [] Center." Id. at 6. At the meeting, plaintiff was "vocal and spoke out" about the "deplorable conditions" at the Center. Id. at 6, 8. On January 8, 2013, plaintiff applied for and was given intermittent leave due to medical and mental health issues. Id. at 5. After she returned to work six days later, she alleges the following occurred:

1. She was called to "the Administrator's office for an alleged meeting" and was not allowed to have a witness, despite her request for one;

2. At the meeting, Potteiger yelled at her, threatened her with her job, accused her of having a "bad attitude" and of not being a "team player," and questioned her about whether she knew who her supervisor was (according to plaintiff, a reference to the state senator who hosted the town hall meeting);

3. As a result of the meeting, plaintiff "had to go home that day," required medical and mental health treatment, and was not allowed (on her health provider's orders) to return to her position due to the emotional distress caused by the meeting;

4. Approximately six months later, on July 3, 2013, she was told by ODVA that she would no longer receive "donated time" and that Potteiger had directed

---

[2] References to page numbers in the briefs are to page numbers automatically assigned to the document by the Court's electronic filing system and shown at the top of each page. These numbers are not necessarily the same as the page numbers assigned to the brief by the party or parties filing the brief.

that she would not be allowed to "return to work with any light duty or restrictions";

5. At an undisclosed time, plaintiff was "admonished for and restricted from visiting a dear friend of hers who resided at the Claremore Veterans Center" because of policy, but plaintiff alleges that "numerous other workers were allowed to visit residents";

6. At an undisclosed time, plaintiff's husband, who was employed by the Center and who has hearing loss, "was admonished for talking too loud";

7. "Plaintiff's office was cleaned out while she was still medically off work and not yet terminated"; and

8. At an undisclosed time, Potteiger undercounted plaintiff's time in service to prevent plaintiff from receiving early retirement benefits, although she was ultimately awarded the benefits;

9. Also on an unspecified date, Potteiger constructively discharged or terminated plaintiff while she remained under medical care.

Id. at 4-10.

## II. ANALYSIS

Defendants initially argue that the claims against Potteiger should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based on sovereign and qualified immunity. (Dkt. 13 at 11, 13-14). Although defendants' motion does not make it clear which claims should be deemed covered by sovereign or qualified immunity, it appears from defendants' reply brief that Potteiger claims qualified immunity from plaintiff's FMLA and §1983 claims, and that both Potteiger and ODVA claim sovereign immunity from the claims for violation of the Oklahoma Constitution, intentional infliction of emotional distress, and malicious interference with contract. See (Reply Br., dkt. 16 at 2-3). Plaintiff does not acknowledge that defendants have moved to dismiss under Rule 12(b)(1), but proceeds, instead, under the assumption that defendants have moved only under Rule 12(b)(6) for failure to state a claim. Further, plaintiff addresses defendants' sovereign immunity argument only indirectly as part of her argument that ODVA violated Article 2, § 22 of the Oklahoma Constitution. See (Resp. Br., dkt. 15 at 2, 7-11). Despite the parties' sparse reference to Rule 12(b)(1) and heavy

emphasis on the Rule 12(b)(6), the Court will address the Rule 12(b)(1) jurisdictional issues first, as they may dictate whether a subsequent Rule 12(b)(6) analysis is necessary.[3]

A.    **Standard of Review – Fed. R. Civ. P. 12(b)(1 and 12(b)(6)**

Generally, a Rule 12(b)(1) motion to dismiss takes one of two forms: a facial attack or a factual attack. E.g., Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995); see Stuart v. Colorado Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001). A facial attack depends on the allegations in the complaint as to subject matter jurisdiction and thus, implicates the sufficiency of the complaint. Holt, 46 F.3d at 1002. In addressing a facial attack the district court must accept the allegations in the complaint as true. "Second a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." Id. at 1003. In addressing a factual attack, the court does not "presume the truthfulness of the complaint's factual allegations," but "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." Id. In this matter, defendants appear to be asserting a facial attack on plaintiff's claims as to subject matter jurisdiction.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief." However, this statement must include "more than labels and conclusions, and a formulaic recitation of the

---

[3] Plaintiff's claims for violation of the Oklahoma Constitution, intentional infliction of emotional distress, and malicious interference with contract arise under Oklahoma state law. The Court has subject matter jurisdiction over them pursuant to 28 U.S.C. § 1367(a), which "broadly authorizes the district courts to exercise supplemental jurisdiction over additional claims . . . ." Kelley v. Michaels, 59 F.3d 1055, 1058 (10th Cir. 1995) (quoting H.R.Rep. No. 101-734, 101st Cong., 2d Sess., 28). The parties in this case have consented to magistrate judge disposition of the case (dkt. 18) and a scheduling order was entered (dkt. 22). At a scheduling conference on June 21, 2016, both sides indicated their preference that the Court retain supplemental jurisdiction over remaining state law claims if all federal claims are dismissed.

elements of a cause of action." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed. 2d 929 (2007). In considering a Rule 12(b)(6) motion, the Court must "identify[] the allegations in the complaint that are not entitled to the assumption of truth," then "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 680-81 (2009).

When reviewing a motion to dismiss, a court must accept plaintiff's factual allegations as true, even if "doubtful in fact." <u>Twombly,</u> 550 U.S. at 555, 127 S.Ct. at 1965. However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed. 2d 209 (1986)). Neither may courts assume the truth of any legal conclusion asserted. <u>Iqbal</u>, 556 U.S. at 680, 129 S.Ct. at 1950. "[I]f [plaintiff's factual allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" <u>Robbins v. Oklahoma ex rel. Okla. Dep't of Human Servs.</u>, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. at 1974). In short, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949 (citations omitted).

## B.     Sovereign Immunity and Plaintiff's Claim against ODVA

Oklahoma has adopted the doctrine of sovereign immunity in the Oklahoma Governmental Tort Claims Act (OGTCA), Okla. Stat. tit. 51, §152.1(A), stating, "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts. <u>Id.</u> The State may waive that immunity only to the extent and in the manner provided for in

the OGTCA 51 O.S. 2001 § 152.1(B). The OGTCA is the exclusive remedy by which an injured plaintiff may recover in tort against a governmental entity in this state. Tuffy's, Inc. v. City of Oklahoma City, 2009 OK 4, ¶7, 212 P.3d at 1163; see, e.g., Watkins v. Central State Griffin Memorial Hospital, 2016 OK 71, ¶21, 377 P.3d 124, 130.

The one claim to which sovereign immunity may apply in this case is the third claim: whether ODVA violated Article 2, §22 of the Oklahoma Constitution by terminating plaintiff for exercising her right to free speech under the Oklahoma Constitution. Defendants argue that Potteiger is entitled to the sovereign immunity against this claim as well, but plaintiff did not sue Potteiger for violating the Oklahoma Constitution or otherwise name him in his official capacity as to this claim or as to plaintiff's claims for intentional infliction of emotional distress and malicious interference with contract. He was named in his individual capacity as to the latter two claims. Further, as explained by the Oklahoma Supreme Court:

> The OGTCA defines a "tort" as a legal wrong involving a violation of a duty imposed by general law or otherwise resulting in a loss as the proximate result of an act or omission of a political subdivision or employee acting within the scope of employment. "Scope of employment" is defined as performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority. Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee has acted within the scope of employment at any given time is a question for the trier of fact. An employee of a political subdivision is relieved from private liability for tortious conduct committed within the scope of employment. A political subdivision is relieved from liability for tortious conduct committed by employees outside the scope of employment.

Tuffy's, Inc., 2009 OK at ¶ 8, 212 P.3d at 1163–64 (internal citations omitted). Here, defendants have not argued that Potteiger was acting within the scope of his employment when he committed the acts alleged by plaintiff. Defendants have argued that Potteiger was acting within the scope of his employment when he committed the acts alleged by plaintiff, but this issue is

one that is reserved for the finder of fact. Defendants may assert it in a motion for summary judgment or later in the litigation.

As a general matter, sovereign immunity is deemed a jurisdictional bar, see Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994), and may be challenged by a motion to dismiss under Rule 12(b)(1), see Holt v. United States, 46 F.3d 1000, 1002-1003 (10th Cir. 1995). Nonetheless, defendants frame the argument as a Rule 12(b)(6) motion to dismiss for failure to state a claim and specifically assert that plaintiff did not allege compliance with the OGTCA. See (Motion to Dismiss, dkt. 13 at 18-22). The confusion is understandable, however, in that the cases they rely upon do not indicate whether dismissal was based on subject matter jurisdiction or failure to state a claim. The Court finds that plaintiff's constitutional tort claim against the ODVA should be dismissed regardless of whether it is based on Rule 12(b)(1) or Rule 12(b)(6) because plaintiff failed to comply with the OGTCA or show that she was not required to comply with it.

Both parties discuss the case of Bosh v. Cherokee County Governmental Building Authority, 2013 OK 9, 305 P.3d 994, where the Oklahoma Supreme Court held that the State Constitution provided a private cause of action for excessive force notwithstanding the requirements and limitations of the OGTCA. Id. 2013 OK 9 at ¶ 23, 305 P.3d at 1001. Plaintiff argues that Bosh applies to other State constitutional provisions, and that she has a private right of action for ODVA's violation of her exercise of free speech under the Oklahoma Constitution. This argument is foreclosed, however, by Perry v. City of Norman, 2014 OK 119, 341 P.3d 689, where the court held that the Bosh case was limited to its facts, an express exemption in the OGTCA applied in that case, and the plaintiff would have been left without a remedy otherwise. 2014 OK 119, ¶19, 341 P.3d at 693. No such exemption applied in Perry. Both of these cases

dealt with excessive force claims. Defendants point out that at least one other federal court has held that <u>Bosh</u> was limited to its facts and its rationale did not extend to other claims against the State or its political subdivisions. <u>See</u> <u>Hedger v. Kramer</u>, No. CIV-13-0654-HE, 2013 WL 5873348 (W.D. Okla. Oct. 30, 2013) (unpublished) (claim against the Department of Human services based on negligent placement of a child in foster care). Plaintiff has no private right of action against the ODVA here for a violation of the Oklahoma Constitution.

State courts in Oklahoma have addressed similar issues regarding sovereign immunity in cases involving wrongful termination claims against a state or political subdivision. A political subdivision was immune from liability where the employee claimed she was fired in retaliation for filing a workers' compensation claim, but the employee failed to comply with the OGTCA notice of claim provisions. <u>Spane v. Central Oklahoma Community Action Agency</u>, 2015 OK CIV APP 29, ¶22, 346 P.3d 437, 443. Another court has held that the State had sovereign immunity, and was not liable in a suit for wrongful discharge, "absent any First Amendment violation." <u>Phillips v. Wiseman</u>, 1993 OK 100, ¶7, 857 P.2d 50, 53. The implication left by <u>Phillips</u> is that, if the plaintiff had alleged a First Amendment violation, the State may have been held liable under the OGTCA, 51 O.S. 1991, §153, assuming the plaintiff complied with the notice and exhaustion requirements of the OGTCA. Plaintiff in this matter alleged a First Amendment free speech claim, but failed to comply with the OGTCA. Accordingly, dismissal of this claim is appropriate.

Defendants also assert that plaintiff's claim "likely falls" under the Oklahoma Whistleblower Act ("OWA"), Okla. Stat. tit. 74 § 840-2.5(A) (1982)). (Motion to Dismiss, dkt. 13 at 22). The OWA provides an administrative remedy for state employees who suffer retaliation due to their reports of governmental wrongdoing. Okla. Stat. tit. 74 § 840-2.5 (2011).

Defendants contend that plaintiff has no private right of action sounding in tort, but must pursue her remedy under the OWA. See Rouse v. Grand River Dam Auth., 2014 OK 39, 326 P.3d 1139, 1140-43; Shephard v. CompSource Okla., 2009 OK 25, 209 P.3d 288, 290-92. The cases cited by defendants, however, deal with whether a plaintiff may sue for wrongful termination (constructive discharge) in violation of public policy—a Burk tort claim. See Burk v. K–Mart Corp., 1989 OK 22, 770 P.2d 24.

Where a plaintiff asserts Article 2, § 22 of the Oklahoma Constitution, and not the OWA, as the basis for a Burk claim, the Burk claim is not precluded by the OWA. Trant v. Oklahoma, 874 F.Supp.2d 1294, 1303-04 (10th Cir. 2012). Further, if a plaintiff's claims are for money damages, the plaintiff need not exhaust her administrative remedies under the OWA because the scope of review under the OWA is limited to other remedies. Id. at 1305-06. Plaintiff did not explicitly make a Burk claim in this case but, even if she had, the OGTCA applies to Burk claims. See Wright v. KIPP Reach Academy Charter School, No. CIV-10-989-D, 2011 WL 1752248, at *6-7 (May 6, 2011) (unpublished). Analysis of whether plaintiff may have a Burk claim or a claim under the OWA involves several other thorny issues which were not briefed by the parties (e.g., whether plaintiff an at-will employee, or whether the ODVA was exempt under the OWA), and this Court declines to analyze them, in light of its decision that plaintiff's constitutional tort claim against the ODVA must be dismissed due to her failure to plead compliance with the OGTCA.

Defendants argue that plaintiff's cause of action against the ODVA is also foreclosed because plaintiff cannot make a claim under both Article II, §22 of the Oklahoma Constitution and the First Amendment to the United States Constitution. (Motion to Dismiss, dkt. 13 at 21, citing Murphy v. Spring, 58 F.Supp.3d 1241, 1260 (N.D. Okla. 2014)). Plaintiff argues that she

has stated a claim for violation of the free speech clause of the Oklahoma Constitution, which is broader than the free speech clause of the United States Constitution. See id. at 1261. These arguments are beside the point. As discussed above, a cause of action for violation of Article II, § 22 of the Oklahoma Constitution must be brought under the OGTCA in compliance with the requirements for suit thereunder. Courts have held that a §1983 First Amendment claim is not immunized or foreclosed by application of the OGTCA to a state law claim, see Tiemann v. Tul- Center, Inc., 18 F.3d 851, 853 (10th Cir. 1994); Duckett v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma, 986 F. Supp. 2d 1249, 1258 (W.D. Okla. 2013), but plaintiff in this matter has not sued the ODVA based on a §1983 First Amendment retaliation claim. Plaintiff has sued Potteiger individually under § 1983, and to this claim, as well as all of plaintiff's claims against Potteiger. Potteiger asserts qualified immunity, either explicitly or implicitly.

**C.    Qualified Immunity**

Initially, the Court notes that "qualified immunity is a defense on the merits, not a jurisdictional bar." Neal v. Davis, No. 12-5005, 2012 WL 1139026, at *2 (10th Cir. Apr. 6, 2012) (unpublished) (internal citations omitted). Because qualified immunity is an affirmative defense and not a question of subject matter jurisdiction, Rule 12(b)(1) is not an appropriate basis for dismissal on this ground. However, qualified immunity may be asserted at the motion to dismiss stage based on Federal Rule of Civil Procedure 12(b)(6). See, e.g., Wood v. Moss, ___U.S.___, 134 S.Ct. 2056, 2066-67, 188 L.Ed. 2d 1039 (2014); Brown v. Montoya, 662 F.3d 1152, 1162 (10th Cir. 2011); Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008). "The doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Wood,

134 S.Ct. at 2066-67 (quoting <u>Ashcroft v. al–Kidd</u>, 563 U.S. ___, ___, 131 S.Ct. 2074, 2080, 179 L.Ed. 2d 1149 (2011) (internal quotations omitted); <u>see</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed. 2d 396 (1982) ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.")

1.      **FMLA**

Under the FMLA, an eligible employee is "entitled to a total of 12 workweeks of leave" for reasons including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1); <u>see</u> <u>Harbert v. Healthcare Servs. Group, Inc.</u>, 391 F.3d 1140, 1147 (10th Cir. 2004). Upon the employee's return from leave, the employer must reinstate the employee to the same position or an alternate position with equivalent pay, benefits, and other conditions. 29 U.S.C. § 2614(a)(1). If an employer interferes with this right by taking adverse action that was "related to the exercise or attempted exercise of [the eligible employee's] FMLA rights," then the employer may be liable under an FMLA entitlement theory. <u>Jones v. Denver Pub. Sch.</u>, 427 F.3d 1315, 1319 (10th Cir. 2005); <u>see</u> 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter."). Further, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2); <u>see</u> <u>Metzler v. Fed. Home Loan Bank of Topeka</u>, 464 F.3d 1164, 1170-71 (10th Cir. 2006).

Defendants argue that plaintiff has failed to state a claim for FMLA interference or retaliation and, thus, as to the first prong of the qualified immunity analysis, that plaintiff has

failed to plead facts showing that Potteiger violated a statutory right under the FMLA. Specifically, Potteiger claims that plaintiff failed to properly allege that Potteiger was her employer, and he argues that he was not plaintiff's employer for purposes of the FMLA. He claims that he was merely an administrator at a facility within the agency structure of the ODVA, plaintiff's true employer and his as well. (Dkt. 13 at 14-15).

The FMLA defines "employer," in relevant part, as any person . . . who employs 50 or more employees" and the definition includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer," as well as any "public agency. . . ." 29 U.S.C. § 2611(a)(4)(A). In 2014, two opinions were issued on the same day in this district which held that public employees may be deemed "employers" under the FMLA and, therefore, held individually liable for money damages. See Owens v. City of Barnsdall, No. 13-CV-749-TCK-PJC, 2014 WL 2197798 at *6 (N.D. Okla. May 27, 2014); Kiefner v. Sullivan, No. 13-CV-714, 2014 WL 2197812, at *9-10 (N.D. Okla. May 27, 2014). The Court acknowledged that there was a circuit split on this question, and the Tenth Circuit had not provided express guidance, but the Eastern and Western Districts in Oklahoma were in agreement that individual public employees satisfy the definition of "employer" in the FMLA. Owens, 2014 WL 2197798 at *6; Kiefner, 2014 WL 2197812, at *9-10.

Defendants argue (albeit briefly, and only in their reply brief) that plaintiff has not shown it was clearly established law that an individual supervisor could be held liable as an employer under the FMLA. There is some language in a footnote to the Owens and Kiefner decisions supporting the later possibility of this argument by reference to Modica v. Taylor, 465 F.3d 174, 187-88 (5th Cir. 2006), but the Tenth Circuit has expressed a contrary view. In Gray v. Baker, 399 F.3d 1241, 1245 (10th Cir. 2005), the Tenth Circuit essentially held that this argument was

improperly framed as an argument regarding qualified immunity. Id. at 1244. The appellate court reasoned that the defendants' defense did not "hinge on their having acted in good faith," and the defendants could not claim, "given the clear requirements of the FMLA, they were unaware that a particular course of conduct would be violative of the FMLA." Id. at 1245.

At least three other district courts have found Gray instructive "even though the ultimate question in *Gray* was whether the Tenth Circuit could properly exercise jurisdiction over the defendants' interlocutory appeal." See Radeker v. Elbert Cty. Bd. of Commissioners, No. 14-CV-01238-CMA-KMT, 2016 WL 1586391, at *2–3 (D. Colo. Apr. 19, 2016); Bonzani v. Shinseki, No. 2:11-CV-0007-EFB, 2013 WL 5486808, at *15 (E.D. Cal. Sept. 30, 2013); Brunson v. Forest Pres. Dist. of Cook Cty., No. 08C2200, 2010 WL 780331, at *8 (N.D. Ill. Mar. 3, 2010). As the Bonzani court explained: "The qualified immunity analysis focuses on whether the right the public official violated is clearly established, not whether it is clearly established that an individual liability attaches. See Pearson, 555 U.S. at 232 (2009) ("The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their *conduct does not violate clearly established statutory or constitutional rights* of which a reasonable person would have known.") (emphasis added)." 2013 WL 5486808, at *15. Likewise, the Brunson court observed: "An argument about whether some class of defendants is subject to liability under a statute has no connection to rules of conduct imposed by that statute." 2010 WL 780331, at *8.

> The two-part standard for qualified immunity asks whether the constitutional right allegedly violated was clearly established at the time of the alleged violation; it does not ask whether it was clearly established that the person who engaged in the conduct could be sued individually. . . . It would be a misuse of qualified immunity to apply the doctrine to insulate a public employee from suit where he does not dispute that his acts (if proven) would violate a clearly established right, but only quarrels about whether he should have to answer for

his conduct personally or whether instead that responsibility should be borne only by his employer.

Rasic v. City of Northlake, 563 F. Supp. 2d 885, 893 (N.D. Ill. 2008). Defendants' Rule 12(b)(6) motion to dismiss based on qualified immunity as to plaintiff's FMLA action fails in this respect.

It also fails on the basis of defendants' argument that plaintiff was not Potteiger's employee for purposes of the FMLA. As used in the FMLA, "eligible employee" is one "who has been employed — (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12–month period. 29 U.S.C. § 2611(2). Plaintiff alleged that she was a former employee of Defendant ODVA and that she was a "qualified employee" under the FMLA. (Petition, dkt. 2 at 4-5). Defendants point out that plaintiff did not allege that she was an employee of *Potteiger* or that her employment the duration requirements set forth in the FMLA. She did allege that he was her supervisor, id. at 10, and that she "applied for and was approved for intermittent leave as a result of a serious health condition that she was undergoing for mental health issues," id. at 5. It stands to reason that plaintiff would not have been approved for FMLA by defendants if she were not an eligible or qualified employee under the FMLA. Defendants' argument in this regard is not well-grounded.

Their argument with regard to plaintiff's interference claim, however, is well-grounded. Defendants point out that plaintiff does not allege that she was prevented from taking FMLA leave, denied reinstatement following leave, or denied permission to take leave in the first place. The Tenth Circuit has distinguished between an FMLA interference claim and an FMLA retaliation claim. Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007). To prevail on her FMLA interference claim, plaintiff must show the following:

**(1)** That [s]he was entitled to FMLA leave;

**(2)** That some adverse action by the employer interfered with h[er] right to take FMLA leave; and

**(3)** That the employer's action was related to the exercise or attempted exercise of h[er] FMLA rights.

Id. (quoting Jones v. Denver Pub. Sch., 427 F.3d 1315, 1319 (10th Cir. 2005)).

As set forth above, plaintiff does allege that she is entitled to FMLA, and defendants do not deny that she actually was eligible. However, her pleading falters as to the second element of the claim. To establish the second element of an FMLA interference claim, "the employee must show that she was prevented from taking the full 12 weeks[] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." Campbell, 478 F.3d at 1287. None of the facts alleged suggest that plaintiff was prevented from taking her full leave or was denied initial permission to take leave: she states she was both granted leave and allowed donated time, implying she was granted permission to take leave and allowed her full amount of leave. (Petition, dkt. 2 at 5). Nor was she denied reinstatement in July, 2013, when she returned to work, though without the "light duty or restrictions" she had requested. Id. at 3. For these reasons, plaintiff's effort to assert an FMLA interference claim cannot succeed.

Her retaliation claim remains available, however. Ultimately, to succeed on this claim, plaintiff must show that:

**(1)** She engaged in a protected activity;

**(2)** [The defendant] took an action that a reasonable employee would have found materially adverse; and

**(3)** There exists a causal connection between the protected activity and the adverse action.

Campbell, 478 F.3d at 1278 (quoting Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006)).

There is no dispute that plaintiff engaged in protected activity. As to whether Potteiger took an action that a reasonable employee would have found materially adverse, such claims are

more appropriately reserved for an analysis as to whether a genuine issue of material fact exists on a motion for summary judgment. Much of the behavior that plaintiff alleges may not rise to the level of being materially adverse. See Anderson v. Coors Brewing, Inc., 181 F.3d 1171, 1178 (10th Cir. 1999) (retaliation claims cannot be based on perceived infringement of a "general civility code" or actions among the "ordinary tribulations of the workplace.") (citation omitted). However, plaintiff has plead some behavior that could rise to that level, although it is not clear whether she is pleading that the acts, including her termination, were due to taking FMLA leave or speaking out against her employer at a public form. In any event, dismissal is not warranted for a failure to sufficiently allege a materially adverse action.

Similarly, an evaluation as to whether there exists a causal connection between the protected activity and the adverse action is premature at this time, especially since plaintiff was awarded intermittent leave, and it is not clear exactly when many of the activities plaintiff claims as adverse actions occurred. More importantly, defendants do not argue that plaintiff has failed to plead a claim for FMLA retaliation claim other than to assert that Potteiger was not an employer and plaintiff was not an eligible employee. Consequently, the Court is not inclined to fully evaluate plaintiff's FMLA retaliation claim at this time or dismiss it.

### 2.  42 U.S.C. § 1983 First Amendment Retaliation

For similar reasons, the Court finds that dismissal would not be proper as to plaintiff's claim under 42 U.S.C. § 1983 that Potteiger retaliated against her in violation of her First Amendment rights to freedom of speech and association. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

16

42 U.S.C.A. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

Plaintiff alleges that Potteiger took several actions adverse to her, including termination, among other things, in retaliation for her participation in a town hall meeting where she spoke about the condition at her facility. She alleged that her speech was political in nature and was not within her job functions. She also alleged that Potteiger was acting under color of state law. This is sufficient to plausibly suggest an entitlement to relief.

Defendants reference several cases in which courts discuss the elements of a First Amendment retaliation claim in the context of a motion for summary judgment. The elements arise out of an analysis knows as the "Garcetti/Pickering" test arising out of Garcetti v. Ceballos, 547 U.S. 410 (2006) and Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205, Will Cty., Ill., 391 U.S. 563 (1968). See Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1202-03 (10th Cir. 2007). Such an analysis has five elements:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

Cypert v. Independent Sch. Dist. No I–050 of Osage County, 661 F.3d 477 (10th Cir. 2011) (quoting Rohrbough v. University of Colorado Hospital Authority, 596 F.3d 741, 745 (10th Cir.2010)). The first three steps of the analysis are issues of law to be resolved by the court,

while the last two are left to the fact finder. <u>Rohrbough v. Univ. of Colo. Hosp. Auth.</u>, 596 F.3d 741, 745 (10th Cir. 2010) (quoting <u>Dixon v. Kirkpatrick</u>, 553 F.3d 1294, 1302 (10th Cir. 2009)).

While the Court believes that plaintiff has alleged sufficient facts in her Petition to meet at least the first three steps, at the motion to dismiss stage of litigation, a plaintiff is not required to establish or prove the elements of the claim or otherwise show that "there is no genuine dispute as to any issue of material fact." <u>See</u> Fed. R. Civ. P. 56. Nonetheless, the Court acknowledges one case referenced by defendants where the elements were discussed on a motion to dismiss, and the motion was granted because the plaintiff failed to provide details about her official duties. <u>Brown v. Smith</u>, No. 12-cv-0043-CVE-PJC, 2012 WL 1085498, at *3 (N.D. Okla. Mar. 29, 2012). Defendants rely on this case from this District to show that plaintiff's claim should be dismissed because she did not sufficiently describe her job duties in detail. The <u>Brown v. Smith</u> court stated as part of its rationale that, "[b]y itself, plaintiff's failure to provide some indication of her job duties is a pleading deficiency." <u>Id.</u>

<u>Brown v. Smith</u> is distinguishable, however, because the court explained: "even without knowing plaintiff's job duties, it is apparent that the allegedly protected speech occurred within the chain of command and was made in opposition to instructions from her supervisors concerning the performance of her official duties." <u>Id.</u> Here, it is apparent that plaintiff's speech occurred outside the chain of her command. The <u>Brown</u> court acknowledged: "The forum in which the speech occurs is a relevant consideration. For example, speech made within an employee's chain of command is likely to be made as part of the employee's official duties, while speech occurring outside of the workplace environment may be protected." <u>Id.</u> (citing <u>Rohrbough</u>, 596 F.3d at 747). It is not apparent that that plaintiff's official duties, or the official

duties of anyone employed by ODVA, would include speaking about the ODVA in a negative manner to a state senator at a town hall meeting.

Finally, plaintiff is not entitled to qualified immunity as to plaintiff's claim under 42 U.S.C. §1983. In several Oklahoma cases, courts have found that defendants are not entitled to qualified immunity where they have alleged, pursuant to 42 U.S.C. §1983, that they were terminated in retaliation for exercising their free speech rights, and they have noted, in particular, the clear establishment of the law that a public employer cannot retaliate against an employee for exercising his or her right of free speech and speak out on matters of public concern. McFall v. Bednar, 407 F.3d 1081, 1090 (10th Cir. 2005); Trant v Oklahoma, 874 F.Supp.2d 1294, 1309 (W.D. Okla. 2012); cf. Duckett v. Oklahoma ex rel. Bd. Of Regents of the University of Oklahoma, 986 F.Supp.2d 1249, 1258 (W.D. Okla. 2013) (federal case law was clearly established and defendants did not effectively dispute the point.) Defendants' motion to dismiss is denied as to plaintiff's §1983 claim.

### 3.    Intentional Infliction of Emotional Distress

Although defendants do not specifically allege that Potteiger possesses qualified immunity as to plaintiff's claim of intentional infliction of emotional distress, they do allege that he is immune under the OGTCA because he acted only in his official capacity. See (Dkt. 13 at 16, 23). As set forth above, Oklahoma state government employees possess qualified immunity in their individual capacities for torts committed within the scope of their employment pursuant to the OGTCA, but malicious or bad faith actions are never within the scope of employment. Pellegrino v. Okla. ex rel. Cameron Univ., 63 P.3d 535, 537 (2003); see also Harmon v. Cradduck, 2012 OK 80, 286 P.3d 643, 650 n.20. An intentional infliction of emotional distress claim involves allegations of bad faith and falls outside the realm of the OGTCA. See Kiefner v.

Sullivan, No. 13-cv-714-TCK-FHM, 2014 WL 2197812, at *14 (N.D. Okla. May 27, 2014). Thus, qualified immunity does not bar this claim against Potteiger in his individual capacity.

In Kiefner, the court reviewed a motion to dismiss and stated that "Oklahoma law directs the district court to act as a gatekeeper and make an initial determination about the validity of [an intentional infliction of emotional distress] claim before sending it to the jury . . . . Many employment-related factual scenarios have been deemed insufficient to satisfy the intentional infliction of emotional distress standards . . . ." Kiefner, 2014 WL 2197812, at *13 (citing Breeden v. League Servs. Corp., 575 P.2d 1374, 1377-78 (Okla. 1978); Gabler v. Holder & Smith, Inc., 2000 OK CIV APP 107, 11 P.3d 1269). The parties urge this Court to evaluate the claim by reference to the elements and the facts alleged as well. However, the Breeden court cited in Kiefner involved the Oklahoma Supreme Court's first time to review a trial court's grant of *summary judgment* in a tort action involving the plaintiff's right to be free from emotional distress. Breeden, 575 P.2d at 1377. In Gabler, the Oklahoma Court of Civil Appeals converted a Rule 12(b)(6) motion to dismiss into a motion for *summary judgment*. 2000 OK CIV APP at ¶9-10, 11 P.3d at 1273. This Court is again, reluctant to require detailed factual allegations. The Court must accept the plaintiff's factual allegations as true, even if "doubtful in fact." Twombly, 550 U.S. at 555.

The ultimately succeed with this claim, plaintiff must show: "(1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff to suffer emotional distress; and (4) the plaintiff's emotional distress was severe." Kiefner, 2014 WL 2197812, at *13 (citing Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1387 (10th Cir. 1986)). However, "[c]onduct which, though unreasonable, is neither 'beyond all possible bounds of decency' in the setting in which it

occurred, nor is one that can be 'regarded as utterly intolerable in a civilized community' falls short of having actionable quality." Brock v. Thompson, 1997 OK 127, ¶35, 948 P.2d 279, 294 (Okla. 1998) (quoting Restatement (Second) of Torts § 46 (Am. Law Inst. 1977)). Further,

> [Oklahoma] appellate courts have consistently found employment related facts . . . do not meet the [intentional infliction of emotional distress] criteria. See, e.g., Eddy v. Brown, 715 P.2d 74 (Okla. 1986) (Among other things, supervisor and foreman mimicked and ridiculed plaintiff in workplace); Anderson v. Oklahoma Temporary Services, Inc., 925 P.2d 574 (Okla. 1996) (Among other things, supervisor made lewd remarks about plaintiff and embarrassed plaintiff by discussing her faults while with coworkers); and Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678 (Okla. 1998) (Employer, among other things, loudly berated plaintiff in workplace and made derogatory sexual comments about plaintiff's fiancee.) See also, Merrick v. Northern Natural Gas Co., 911 F.2d 426 (10th Cir.1990) (Supervisor yelled at, cursed, and harshly criticized plaintiff with summary judgment for employer affirmed.)

Gabler, 1997 OK at ¶64, 11 P.3d at 1280 (Okla. Civ. App., 2000).

Plaintiff alleges that Potteiger, *inter alia*, "yelled at" her, accused her of "having a bad attitude," and "not being a team player," "derisively and maliciously" asked her questions, "attempted to dissuade [her] from exercising her rights," admonished her and prohibited her from visiting a friend at the Center, and admonished her husband for "talking too loud" (Dkt. 2 at 5-10). While certainly not admirable behavior, Potteiger's comments to plaintiff seem no more outrageous than the events described in the cases cited by Gabler above, such as mimicking, ridiculing, making lewd remarks, berating, making derogatory sexual comments about a fiancée, or yelling, cursing, or harshly criticizing.

However, "reasonable people" could conclude that other alleged conduct was extreme or outrageous. See Miller v. Miller, 1998 OK 24, ¶ 33, 956 P.2d 887, 902. Plaintiff has alleged that Potteiger fired her, threatened to fire her, prohibited her from receiving donated time, cleaned out her office while she was off work, and undercounted her service for purposes of her retirement benefits, knowing that she had been diagnosed with major depressive disorder. The facts and

circumstances surrounding an employee's discharge may give rise to liability for intentional infliction of emotional distress. Hill v. Noram Investments, 22 F.3d 932 (10th Cir. 1999); Smith v. Farmers Co-op Assoc. of Butler, 1992 OK 11, ¶ 19, 825 P.2d 1323, ___. Plaintiff here has "nudged" her claim "across the line from conceivable to plausible.'" Robbins, 519 F.3d at 1247.

### 4.    Malicious Interference with a Contractual Relationship

Plaintiff alleges that Potteiger was her supervisor, and that he "interfered with her contractual relationship by terminating her and/or effecting a constructive discharge." (Dkt. 2 at 10). Again, defendants do not specifically allege that Potteiger possesses qualified immunity as to his claim for malicious interference with a contractual relationship, but they do argue that he acted in good faith. All claims of tortious interference with business relationship, or other names for the same tort, such as intentional interference or malicious interference with contract or business relations, are excluded from OGTCA coverage. Tuffy's, Inc., 2009 OK at ¶ 15, 212 P.3d at 1165. They are excluded because bad faith is a necessary element of the tort. "The tort requires a showing of bad faith and thus cannot be committed within the scope of employment by an employee of a political subdivision. Id., 2009 OK at ¶ 15, 212 P.3d at 1166. The elements of a claim for malicious interference are: 1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference. Id., 2009 OK at ¶ 14, 212 P.3d at 1165. Potteiger is not entitled to qualified immunity on this claim.

Nor is he entitled to dismissal. In general, "an agent of a principal cannot be held liable for interfering with a contract between the principal and a third party." Martin v. Johnson, 1998 OK 127, ¶ 30, 975 P.2d 889, 8960. However, an agent can "be held personally liable on an interference with contract claim if the agent was acting against the interests of the principal and

in furtherance of interests of the agent." Id. The Martin court explained: "If an employee acts in

bad faith and contrary to the interests of the employer in tampering with a third party's contract

with the employer we can divine no reason that the employee should be exempt from a tort claim

for interference with contract. Courts in other jurisdictions agree." Martin, 1998 OK at ¶ 32, 975

P.2d at 896-897. The Martin court concluded that the plaintiff, a school teacher, could amend her

petition to add a cause of action against her principal and superintendent for tortious interference

with contract, even though they were agents of the school district that employed her. 1998 OK at

¶ 34, 975 P.2d at 897-898.

Plaintiff in this action has sufficiently plead that Potteiger acted in bad faith and contrary

to the interests of the ODVA when he fired her and, plausibly, when he "effected a constructive

discharge" by actions such as prohibiting her from receiving donated leave, clearing out her

office, and miscalculating her service for retirement purposes.

### III. CONCLUSION

ACCORDINGLY, IT IS HEREBY ORDERED that defendants' motion is **GRANTED**

**in part and DENIED in part** in accordance with this opinion.

(1) Defendants' motion is GRANTED as to plaintiff's FMLA interference claim

and DENIED as to plaintiff's FMLA retaliation claim;

(2) Defendants' motion is DENIED as to plaintiff's claim that Potteiger violated

her rights under 42 U.S.C. §1983;

(3) Defendants' motion is GRANTED as to plaintiff's claim that ODVA violated

Article 2, § 22 of the Oklahoma Constitution

(4) Defendants' motion is DENIED as to plaintiff's claim that Potteiger is liable

for an intentional infliction of emotional distress; and

(5) Defendants' motion is DENIED as to plaintiff's claim that Potteiger maliciously interfered with her contractual relationship with ODVA.

DATED this 31st day of March, 2017.

T. Lane Wilson
United States Magistrate Judge